UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY J. AJAERO,

              Plaintiff,

-against-

FORMER PRES. OBAMA, ET AL.,

              Defendants.

23-CV-8096 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is appearing *pro se*, invokes the Court's federal question jurisdiction, alleging that Defendants have violated his rights under federal and state law. By order dated September 14, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the action.

## STANDARD OF REVIEW

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

    While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff Anthony J. Ajaero brings this action invoking the Court's federal question jurisdiction. Named as Defendants are the following: (1) former President Barack Obama; (2) Hillary R. Clinton; (3) President Joe Biden; (4) Vice President Kamala Harris; (5) the New York City Law Department; (6) Office of the New York City Comptroller; (7) Office of the New York State Attorney General; (8) United States Department of Justice; (9) the New York City Department of Investigation; (10) the Federal Bureau of Investigation ("FBI"); (11) the Central Intelligence Agency ("CIA"); (12) the 47th Precinct of the New York City Police Department; (13) New York State Court Justices Douglas McKeon, Margaret Chan, Hillary Gingold, Nora Anderson, Doris Gonzalez, Mitchell Danziger, Julia Rodriguez, Norma Ruiz, Bernadette Black, Brenda Spears, Howard Baum, Miriam Brier, Bryan Tovar, and Arlene Hahn; (14) McAloon &

Friedman PC; (15) Hinshaw & Culbertson LLP; (16) Shapiro, Dicaro, Barak LLC; (17) Gross Polowy LLP; (18) business person Albert Basal; (19) Vishnik, Milizio, McGovern; (20) Oshrie Zak; (21) Reddy, Levy, Ziffer; (22) Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf; (23) the New York State Attorney Grievance Committee; (24) the Lawyers Fund for Client Protection; (25) the Commission on Judicial Conduct; and (26) attorney Michael Goldstein, Esq.

Plaintiff's 51-page complaint consists of the Administrative Office of the United States Courts's ("AO") Complaint and Request for Injunction form, a copy of a decision and order rendered by the Hon. Margaret A. Chan of the Supreme Court of the State of New York, and a document titled "Federal Complaint with Inju[n]ctive & Pauperis Relief."

On the AO complaint form, Plaintiff checks the box to invoke the court's federal question jurisdiction, and in response to the question asking which federal statues, federal treaties, or provisions of the federal constitution are at issue in this case, Plaintiff references "[p]residential + [j]udicial [a]buse of MEDiC Act."[1] (ECF 1, at 3.)[2] The complaint form otherwise refers to the court to the attached "Federal Complaint with Inju[n]ctive & Pauperis Relief."

The following allegations are taken from the 38-page attachment. Plaintiff states that Defendants violated the following "statutes":

> RICO, DOJ's Rule 1661., Mandates on Judicial Conduct of the Chief
> Administrative Judge: Part 100, 100.1-100.4, RPAPL 853, 1303, CPLR 510(3),
> 511, 1015, 3015[B], 301, 302(A)(1), (A)(2), 306-b, 5001 (A), 5004, Judicial Law
> Section 487, 756, EPTL 5-4.6, 4-1.1, 4-1.2, PEN 187.25, 190.26, Title 42 USC
> § 1983, 18 U.S.C. 1519, SCPA 1110(3), 17A, 18, 402, 2103, EPTL 5-1.4(a)(1),

---

[1] Plaintiff appears to be referring to the National Medical Error Disclosure and Compensation Act," a bill that was introduced in 2005 by then-Senators Hillary Clinton and Barack Obama. The bill was not enacted into law.

[2] The Court quotes the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless otherwise indicated.

3

> RPAPL 501, 522, 453, Dodd-Frank Act, EMTALA, IIED, RPL 223(b) & First Amendment of US Constitution.

(*Id.* at 16.)

Plaintiff's claims appear to arise from previous or ongoing litigation in the New York state courts related to his deceased father's estate, a medical malpractice claim involving Plaintiff's father, and Plaintiff's pending eviction. He states,

> At the crux of the Plaintiff's petition lies an egregious grave-robbing/self-dealing and judicial conflict-of-interest scandal wherein the Plaintiff has presented irrefutable proof that Administrative Judge Douglas McKeon presided without jurisdiction and intentionally misused the AHRQ Federal Grant given to him by Pres. Barack Obama to engage in civil theft and self-dealing as Chairman of the Board for Montefiore Hospital.

(*Id.* at 25.)

Plaintiff further alleges,

> Barack Obama, Hilary Clinton and Joe Biden arrogantly defied and perversely undermined the US Constitution by deceitfully passing the MEDiC Act and by illegally expanding the jurisdiction of the judiciary in NY State to fraudulently permit Crooked Hon. Douglas McKeon special unconstitutional powers and Federal AHRQ grants to conduct Judge-directed negotiations in medical malpractice suits as a means to steal from Plaintiff's under the guise of 'speeding up or expediting' settlements and resolutions in these matters.

(*Id.* at 18.)

Obama and Clinton, when they were in the United States Senate, "masterminded the MEDiC Act which they would utilize to amass secret fortunes by unduly enriching themselves on the backs of uneducated and grieving plaintiff's seeking remedy in medical malpractice proceedings." (*Id.* at 19.) New York State Court judges have "breached each and every statute of the Judicial Code of Conduct as it pertains to the neutrality and impartiality of the judiciary." (*Id.*) Plaintiff alleges further that

> [t]he Committee on Judicial Conduct, Attorney Grievance Fund as well as the Lawyers Fund for Client Protection have all been weaponized by Obama and Biden to obstruct and improperly deny relief to the Plaintiff in addition to the 47[th]

4

       Precinct, FBI, CIA, DOJ Attorney general and DOI Inspector General employees Letitia James, Sharnette Grant, Erin Figueira, Andrew Stein and Andrew Brundsen.

(*Id.*)

       At the beginning of Plaintiff's action in the Supreme Court of the State of New York, New York County under docket number 450156/18E, "orders were given to [Justice] Julia Rodriguez to have the plaintiff[] shot and killed in her court part while directives were also given to [Justices] Doris Gonzalez and Mitchell Danziger to foreclose on both of the Plaintiff's Bronx properties in the same week." (*Id.*)

       Plaintiff maintains that Justices Gonzalez and Danzinger "fraudulently foreclosed" on Plaintiff's properties in retaliation for him filing case 450156/18E. (*Id.*) This retaliation was conducted "at the behest" of Justice McKeon. (*Id.* at 20.)

       Plaintiff alleges that the state court judges are "profiteering by blatantly ignoring their own obvious conflicts-of-interest and extending bribes to fellow judges . . . to conceal these conflicts." (*Id.* at 21.) For example, Plaintiff alleges that Justice McKeon was "Chairman of the Board of Montefiore Hospital[3] yet oversaw" the settlement and approved fees in "the immediate matter" even though "his own hospital" was named as a defendant.[4] (*Id.*) Because McKeon also served as a Justice in the Appellate Division, he "influenced and bribed his fellow Appellate Justices to censor, suppress and conceal his intentional miscarriage of justice, grand larceny, civil theft and judicial misconduct." (*Id.* at 21-22.)

---

      [3] Elsewhere in the complaint, Plaintiff describes Justice McKeon as the "own[er]" of Montefiore Hospital. (*See id.* at 24, 38)

      [4] It is unclear to which "immediate matter" Plaintiff is referring. Many of the allegations in his submission appear to be drafted as if they were intended to be submitted in one of Plaintiff's state court matters.

5

Plaintiff "seeks recourse from the Federal Court to undo, reverse and overturn . . . Hon. McKeon's intentional miscarriages of justice against [Plaintiff's] decedents estate which . . . Hon. Doris Gonzalez and the Appellate Division have sought to fraudulently conceal, censor, suppress and dispose of." (*Id.* at 22.)

Furthermore, Plaintiff asserts that Justice McKeon was

> aided, abetted and shielded by multiple judicial officers, attorneys (Gair, Gair, Conason; Reddy, Levy, Ziffer, PC; McAloon & Friedman; Milizio, McGovern), banks (HSBC and Wells Fargo), et al agents and representatives within the Bronx and Manhattan Supreme Courts who seek to suppress the whistle-blowing assertions of the Plaintiff as a means to fraudulently conceal his egregious and intentional miscarriages of justice.

(*Id.* at 25.)

Plaintiff refers to a state medical malpractice case arising from the death of his father while at Montefiore Hospital. Plaintiff, in that action, appears to have contested Montefiore's contention that his father "was comfortable and closely monitored until the time of this death" and that "there was no evidence of pain and suffering." (*Id.* at 26.) Plaintiff disputes these claims, asserting that they are untrue because his father was found "sitting in a chair in his room and unresponsive." (*Id.*) According to Plaintiff, the fact that his father was "found" sitting in a chair demonstrates that "no one was present to monitor the decedent" because "[l]ife monitors cannot be properly attached to patients if they are not lying in a hospital bed." (*Id.* at 27.)

Plaintiff also challenges a finding by Justice Chan in his New York Supreme Court, New York County, matter that she did not have jurisdiction of Plaintiff's claims because they must be filed in the Surrogate's Court.[5] (*See id.* at 29.) Plaintiff alleges that Justice McKeon and his "sinister Democratic mercenaries" have been "intimidating and controlling Hon. Chan ever since

---

[5] Plaintiff attaches Justice Chan's order to the complaint. (*See* ECF 1, at 7-12.)

6

they attempted to kill her brother while she was campaigning to be elected."[6] (*Id.* at 30.) Plaintiff asserts that "it is evident that Crooked Hon. McKeon has, yet again, leveled threats at the Court[7] to attempt to assassinate Hon. Chan's brother again or some other family of the stigmatized and traumatized Hon. Chan." (*Id.* at 30.)

Plaintiff refers throughout the complaint to the existence of sisters, whom he maintains are illegitimate children of his deceased father, who are involved in the distribution of Plaintiff's father's estate. (*See id.* at 39-41.)

Plaintiff also asks the Court, pursuant to New York state law, to "grant the TROs and all other reliefs" requested by Plaintiff in 2019, and "to halt and prohibit the fraudulent evictions pending" in his state court actions. (*Id.* at 31.) Plaintiff maintains that his eviction is illegal because the properties was "improperly foreclosed and stolen by HSBC due to the theft, perjuries and misappropriations committed in and by the same courts wherein Hon. Chan's dangerously incompetent and defiant ruling coerced the Plaintiff to seek remedy and relief." (*Id.* at 34.) He alleges that the state courts "declined to sign two [orders to show cause] wherein the plaintiff requested TRO's to stop foreclosures and evictions," "[m]ost likely because Hon. Chan feared retribution and retaliation" from Justice McKeon's "cronies who tried to assassinate her own brother." (*Id.* at 33.)

Plaintiff also references an "assassination plot" carried out against him by his mother "to kill [him] for compensation so that she can illegally intercept the fraudulent $1.2 million escrowed settlement." (*Id.* at 36.) This is the same settlement that Justice Chan "refused to

---

[6] Regarding the alleged "attempted assassination" of Justice Chan's brother, Plaintiff states that he was "assaulted by [Justice Chan's] rivals who hired political hit men to run him down with a vehicle." (*Id.* at 37.)

[7] As noted above, Plaintiff's complaint contains wording suggesting that he may have drafted it with the intention of filing in a different court.

7

release to the Plaintiff in 2019." (*Id.*) Moreover, Plaintiff filed complaints with the NYPD Internal Affairs Bureau against the 47th Precinct because its officers "refused to take the Plaintiff's written report" regarding the assassination plot. (*Id.*)

Plaintiff includes two sections that appear to describe relief he may be seeking: one section labeled "Proposed Remedies which are Mandated by Law" and the other section simply labeled "Relief." In the former section, Plaintiff states,

> As a direct result of the aforementioned massively unconstitutional RICO Democratic Presidential Ambulance-Chasing scandal the plaintiff's wrongful death settlement was stolen and misappropriated causing the plaintiff's properties to be fraudulently foreclosed and the Plaintiff no faces illegal and retaliatory evictions on 10/19/2023 which out to be TRO'd, stayed and ultimately dismissed.

(*Id.* at 41.)

Also in that section, Plaintiff requests that: (1) the MEDiC Act be repealed and all money earned under it be "rescinded"; (2) he be awarded "declaratory and summary judgment and all reliefs and damages prior requested" in four previous state court actions; (3) "[a]ll medical malpractice matters" in which Justice McKeon "intervened or acted in excess of jurisdiction by engaging in judge-directed negotiations ought to be revisited, reversed, rescinded, renegotiated and/or retried"; and (4) Justice McKeon "and all of his aiders and abettors in the Presidency, Judiciary, Bronx Public Administrator, Montefiore Hospital, HSBC and Wells Fargo," among others, "face disbarment and criminal sanctions under the RICO statute." (*Id.* at 41.) McKeon and his "political assassins" are also "liable for the IIED, auto repairs, auto collisions, bodily injury, medical bills and parking tickets accrued by the Plaintiff as he was forced to undertake delivery work to offset his legal fees which would have been avoided but for [Justice] Chan's erroneous repeated statements that she lacked jurisdiction." (*Id.* at 47.)

In the other section, labeled "Relief," Plaintiff asks that the "Justices named as Defendant[s]" be disbarred, and that all Defendants be prosecuted under RICO. (*Id.* at 49.) He

8

further asks the Court to direct the state courts to grant him the temporary injunctive relief and temporary restraining orders he sought in his various state court matters. (*See id.* at 50-51.)

## DISCUSSION

### A. Anti-Injunction Act

Plaintiff asks this Court to direct the New York State Courts to issue injunctive relief in what appear to be various ongoing state court proceedings. The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. 2283. "[A]ny injunction against state court proceedings otherwise proper . . . must be based on one of the specific statutory exceptions [in the Act] if it is to be upheld." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 317 (E.D.N.Y. May 23, 2012) (the Anti-Injunction Act imposes "an absolute ban on enjoining any state court proceeding, unless the facts of the case bring the matter within one of the three narrowly construed exceptions" (citation omitted)). State-court proceedings "should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately" the United States Supreme Court. *Atl. Coast Line R.R. Co*, 398 U.S. at 287.

Here, Plaintiff asks this Court to require the state courts to grant TROs and other relief in what appear to be Plaintiff's ongoing state court actions, relating to administration of his deceased father's estate and foreclosure proceedings relating to property owned by Plaintiff. Plaintiff has not, however, alleged any facts suggesting that any of the exceptions to the Act's prohibition against federal court intervention into state court proceedings applies. The Court

9

therefore dismisses Plaintiff's claims in which he asks this Court to intervene in his pending state court litigation, as prohibited by the Anti-Injunction Act.

**B.**     *Younger* **Abstention**

Even if the Court had jurisdiction to consider Plaintiff's complaint, the *Younger* abstention doctrine also cautions against enjoining or otherwise interfering in ongoing state proceedings. *See Sprint Comms., Inc. v. Jacobs*, 571 U.S 69, 77–78 (2013) (defining "*Younger's* scope"); *see generally Younger v. Harris*, 401 U.S. 37, 43–45 (1971). *Younger* abstention is appropriate in three categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 571 U.S. at 72-73.

In *Sprint*, the United States Supreme Court held that, among other circumstances, the *Younger* abstention doctrine must be applied to federal-court actions that would, in the absence of this doctrine, intervene in state-court civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* at 72-73. When a plaintiff "seek[s] injunctive relief relating to the same property that is the subject matter of the underlying state court action[,] [this] *Sprint* prong applies." *Abbatiello v. Wells Fargo Bank, N.A.*, No. 15-CV-4210, 2015 WL 5884797, at *4 (E.D.N.Y. Oct. 8, 2015); *see Clark v. Bloomberg*, No. 10-CV-1263, 2010 WL 1438803, at *2 (E.D.N.Y. Apr. 12, 2010) (*Younger* abstention doctrine precludes federal district court from staying pending state-court foreclosure and eviction proceedings because "both concern the disposition of real property and hence implicate important state interests, and there is no reason to doubt that the state proceedings provide [the plaintiff] with an adequate forum to make the arguments he seeks to raise in this court").

10

Plaintiff's request that this Court intervene in his various state court proceedings, including his eviction or foreclosure proceedings, by directing the state courts to take certain actions implicates the state's interest in enforcing the orders and judgments of its courts. *Younger* abstention therefore applies and bars the relief Plaintiff is seeking. Ultimately, if Plaintiff is aggrieved at the process and outcomes of the state court proceedings, he can avail himself of the New York State appellate process by appealing any decisions to the New York State Appellate Division.

C.   *Rooker-Feldman* **Doctrine**

To the extent that Plaintiff challenges the final outcome of any of his state court proceedings, his claims are barred under the *Rooker-Feldman* doctrine. The doctrine – created by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) – precludes federal district courts from reviewing final judgments of the state courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). The *Rooker-Feldman* doctrine applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

It is unclear from the complaint whether any of the state court proceedings in which Plaintiff asks this Court to intervene have been terminated. To the extent Plaintiff is asking this

11

Court to review or reject the holdings of his previous state court proceedings that he alleges have caused him injury, such claims are barred by the *Rooker-Feldman* doctrine and are dismissed.

### D.    Private Prosecution

Plaintiff seeks to initiate criminal prosecutions, including prosecutions under RICO, against various defendants. However, Plaintiff cannot initiate the arrest and prosecution of an individual in this Court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff or the Court direct prosecuting attorneys to initiate a criminal proceeding against Defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses the Plaintiff's claims seeking criminal prosecution for failure to state a claim. *See* 28 U.S.C § 1915(e)(2)(B)(ii).

### E.    Sovereign Immunity

Plaintiff asserts claims against President Joe Biden, Vice President Kamala Harris, DOJ, FBI, and CIA, and may also be asserting claims against Barack Obama arising during his presidency. The Court must dismiss Plaintiff's claims against these defendants in their official capacities under the doctrine of sovereign immunity. This doctrine bars federal courts from hearing all suits against the federal government, including suits against any part of the federal government, such as a federal agency or federal officer, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived.").

The Federal Tort Claims Act ("FTCA") provides a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1). "The proper defendant in an FTCA claim is the United States, not individual federal employees or agencies." *Holliday v. Augustine*, No. 3:14-CV-0855, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015). A plaintiff may seek damages against the United States under the FTCA, but such relief is not available for the violation of a constitutional right. *See FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims.").

A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claim. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Before bringing a claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). Such an administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a). A claimant may thereafter challenge the Government's final denial in a federal district court by filing an action within six months after the date of the mailing of the notice of final denial by the federal entity. *See* § 2401(b). If no written final determination is made by the appropriate federal entity within six months of the date of the claimant's filing of the administrative claim, the claimant may then bring an FTCA action in a federal district court. *See* § 2675(a). While this exhaustion requirement is jurisdictional and cannot be waived, *see Celestine v. Mount Vernon Neighborhood*

*Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005), "the FTCA's time bars are nonjurisdictional and subject to equitable tolling," *Kwai Fun Wong*, 575 U.S. at 420.

To the extent that Plaintiff asserts nonconstitutional tort claims for damages under the FTCA, he has not alleged facts demonstrating that he filed an administrative claim under the FTCA with a federal government entity for damages and subsequently received a final written determination before bringing this action. He has also not alleged facts showing that it has been more than six months since she has filed such an administrative claim. Accordingly, any claims for damages that Plaintiff wishes to pursue against the United States of America in this action are not permissible under the FTCA, and the Court dismisses those claims under the doctrine of sovereign immunity, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and consequently, for lack of subject matter jurisdiction, *see* Fed. R. Civ. 12(h)(3).

F.     **Presidential Immunity**

Plaintiff sues President Joe Biden and, possibly, former President Barack Obama, for acts taken in their roles as President. However, the President of the United States "is entitled to absolute immunity from damages liability predicated on his official acts." *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982); *Carroll v. Trump*, 498 F. Supp. 3d 422, 438-39 (S.D.N.Y. 2020). Plaintiff's claims against President Joe Biden and former President Barack Obama, for actions taken in their roles as President, are therefore dismissed on grounds of absolute immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))).

G.  **Legislative Immunity**

Plaintiff's claims against Barack Obama and Hillary Clinton appear to arise from actions they took in their roles as United States Senators with respect to introducing legislation known as the MEDiC Act. Obama and Clinton are shielded from liability for actions they took in their official capacities as United States Senators, in their legislative roles. The Speech and Debate Clause of Article I of the Constitution provides that "[t]he Senators and Representatives . . . shall not be questioned in any other Place" for "any Speech or Debate in either House." U.S. Const. Art. I, § 6, cl. 1. This clause renders "members of Congress . . . absolutely immune" for their legislative acts. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 508-09 (1975). Legislative immunity shields an official from liability if the act in question was undertaken "'in the sphere of legitimate legislative activity'" and is the sort of "broad, prospective policymaking that is characteristic of legislative action." *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210-11 (2d Cir. 2003) (quoting *Bogan, v. Scott-Harris*, 523 U.S. 44, 55 (1998)).

Here, Plaintiff sues Obama and Clinton as federal employees and as legislators. They are absolutely immune from suit for any actions taken in their official capacities and are protected from the "burden of defending themselves" for their legislative activities. *Dombrowski v. Eastland*, 387 U.S. 82, 85, (1967). The Court must dismiss Plaintiff's claims against Obama and Clinton under the doctrine of legislative immunity, for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

H.  **Eleventh Amendment Immunity**

The Court must also dismiss Plaintiff's claims under 42 U.S.C. § 1983 against the New York State Attorney General's Office. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*,

568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's Section 1983 claims against the New York State Attorney General's Office are therefore barred by the Eleventh Amendment and are dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction."); *see* 28 U.S.C. § 1915(e)(2)(B)(iii).

**I.     Absolute Judicial Immunity**

Plaintiff names as Defendants New York State Supreme Court Justices McKeon, Chan, Gingold, Anderson, Gonzalez, Danzinger, Rodriguez, Ruiz, Black, Spears, Baum, Brier, Tovar, and Hahn. Judges are absolutely immune from suit for damages under Section 1983 for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

16

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Plaintiff does not allege any facts showing that these defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because the Court understands Plaintiff to be suing these state court judges for "acts arising out of, or related to, individual cases before [them]," they are immune from suit for such claims. *Bliven*, 579 F.3d at 210. Moreover, Plaintiff has alleged no facts demonstrating that these defendants violated a declaratory decree or that declaratory relief is unavailable against them in the state courts. The Court therefore dismisses any claims for money damages Plaintiff may be asserting against these defendants for seeking monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the in forma pauperis statute]."). Any claims for injunctive relief Plaintiff may be asserting against these defendants are dismissed under the doctrine of absolute judicial immunity.

**J.   Private Parties**

Plaintiff sues numerous private law firms and private lawyers. A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see*

17

*also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a defendant by private counsel in state court proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under Section 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of Section 1983). As the defendant law firms and lawyers are private parties who are not alleged to work for any state or other government body, Plaintiff has not stated a claim against these defendants under Section 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### K.     Leave to Amend is Denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff's claims are barred under the Anti-Injunction Act, the *Younger* abstention doctrine, sovereign immunity, and/or the *Rooker-Feldman* doctrine, and because he names improper defendants, the defects in Plaintiff's complaint cannot be cured with an amendment. The Court therefore declines to grant Plaintiff leave to amend his complaint.

### CONCLUSION

The Court dismisses the complaint for the reasons set forth above.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this action.

SO ORDERED.

Dated:   November 7, 2023
         New York, New York

                                           /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          Chief United States District Judge